UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| MID-CENTURY INSURANCE COMPANY, | CASE NO. C19-0285JLR |
| Plaintiff, | ORDER |
| v. | |
| HUNT'S PLUMBING & MECHANICAL LLC, et al., | |
| Defendants. | |

## I.   INTRODUCTION

Before the court is Plaintiff Mid-Century Insurance Company's ("Mid-Century")

unopposed motion for summary judgment.  (MSJ (Dkt. # 20).)  Defendants Hunt's

Plumbing & Mechanical, LLC ("Hunt's Plumbing"), Beacon Plumbing & Mechanical,

Inc. ("Beacon"), Jason Hunt, and Sari Hunt have appeared in this action (*see* Dkt. ## 5-6,

11) but did not file answers or responses to Mid-Century's motion (*see generally* Dkt.).

Mid-Century seeks (1) a declaration that Mid-Century has no duty to defend or indemnify

Hunt's Plumbing, Mr. Hunt, and Ms. Hunt (collectively, the "Insureds") in the lawsuit currently pending in King County Superior Court, entitled *Beacon Plumbing & Mechanical, Inc. v. Hunt's Plumbing & Mechanical, LLC, et al.*, No. 18-2-14205-9 KNT (the "Liability Action"); (2) a declaration that Mid-Century may withdraw from its defense of the Insureds in the Liability Action; and (3) a ruling that it is entitled to reimbursement of the monies it has already paid to defend Insureds in the Liability Action. (MSJ at 7.) The court has considered the motion, Mid-Century's submissions in support of the motion, the relevant portions of the record, and the applicable law. Being fully advised,[1] the court RESERVES RULING on Mid-Century's motion and GRANTS Mid-Century 15 days from the filing date of this order to submit a response to this order on the issue of what impact, if any, the Insureds' Cyber Liability and Data Breach Response Coverage form has on its entitlement to summary judgment. The court also GRANTS the Insureds five days from the date of Mid-Century's filing, if any, to submit a response to any arguments raised in Mid-Century's response.

## II.    BACKGROUND

**A.    The Insurance Policy**

Mid-Century issued Policy No. 605127771 to Hunt's Plumbing for the policy period from August 23, 2017 to August 23, 2018 (the "Policy"). (*See* Am. Compl. (Dkt. # 13) ¶ 2.2; Edmundson Decl. (Dkt. # 21) ¶ 5, Ex. 3.) Two of the coverage forms

*//*

---

[1] Mid-Century does not request oral argument (*see* MSJ), and the court concludes that oral argument is unnecessary to its disposition of the motion, *see* Local Rules W.D. Wash. LCR 7(b)(4).

included in the Policy are potentially relevant here: (1) the Businessowners Liability Coverage, Form BP00060197—as modified by the Personal and Advertising Injury Coverage Amendatory Endorsement, Form E3342-ED2; the Multiple or Enhanced Damages Exclusion, Form E2042-ED2; and the Washington Changes, Form W7912-ED4 (Edmundson Decl. ¶ 5, Ex. 3 at 126-140 (Businessowners Liability Coverage); *id.* at 143-145 (Personal and Advertising Injury Coverage Amendatory Endorsement); *id.* at 287 (Multiple or Enhanced Damages Exclusion); *id.* at 205-210 (Washington Changes)); and (2) the Cyber Liability and Data Breach Response Coverage, Form J7155-ED1—as modified by the Washington Amendatory Endorsement, Form W2276-ED1 (*id.* at 64-87 (Cyber Liability and Data Breach Response Coverage); *id.* at 62-63 (Washington Amendatory Endorsement)).

    1.  <u>Businessowners Liability Coverage</u>

The Businessowners Liability Coverage form provides coverage, in pertinent part, as follows:

**A. Coverages**

   **1. Business Liability**

     **a.** We will pay those sums that the insured becomes legally obligated to pay as damages because of "bodily injury", "property damage" or "personal and advertising injury" to which this insurance applies. We will have the right and duty to defend the insured against any "suit" seeking those damages. However, we will have no duty to defend the insured against any "suit" seeking damages for "bodily injury," "property damage" or "personal and advertising injury" to which this insurance does not apply. . . .

\*\*\*\*\*\*\*\*\*\*

//

> If we initially defend an insured or pay for an insured's defense but later determine that none of the claims, for which we provided a defense or defense costs, are covered under this insurance, we have the right to reimbursement for the defense costs we have incurred.
>
> The right to reimbursement under this provision will only apply to the costs we have incurred after we notify you in writing that there may not be coverage and that we are reserving our rights to terminate the defense or payment of defense costs and to seek reimbursement for defense costs.

(Edmundson Decl. ¶ 5, Ex. 3 at 126, ¶ A.1 (Businessowners Liability Coverage); *id.* at 143, ¶ A (amending paragraph A.1 of the Businessowners Liability Coverage); *id.* at 208, ¶ B.1 (amending paragraph A.1.a of the Businessowners Liability Coverage).)

The Businessowners Liability Coverage form defines the key terms in paragraph A.1.a.—"bodily injury," "property damage," and "personal and advertising injury"—as follows:

**F.  Liability and Medical Expenses Definitions**

**\*\*\*\*\*\*\*\*\*\***

**3.** "Bodily injury" means bodily injury, sickness or disease sustained by a person, including death resulting from any of these at any time.

**\*\*\*\*\*\*\*\*\*\***

**13.** "Personal and advertising injury" means injury, including consequential "bodily injury", arising out of one or more of the following offenses:

**\*\*\*\*\*\*\*\*\*\***

**f.** The use of another's advertising idea in your "advertisement"; or

**g.** Infringing upon another's copyright, trade dress or slogan in your "advertisement".

//

Damages because of "personal and advertising injury" do not include disgorgement, restitution or any other similar monetary amount based, in whole or in part, on an insured's unlawful gain or profit, alleged or otherwise.

**********

**15.** "Property damage" means:

**a.** Physical injury to tangible property, including all resulting loss of use of that property. All such loss of use shall be deemed to occur at the time of the physical injury that caused it; or

**b.** Loss of use of tangible property that is not physically injured. All such loss of use shall be deemed to occur at the time of the "occurrence" that caused it.

(*Id.* at 137, ¶ F.3 (defining "[b]odily injury"); *id.* at 145, ¶ 2 (defining "[p]ersonal and advertising injury"); *id.* at 139, ¶ F.15 (defining "[p]roperty damage").)

In addition, the Businessowners Liability Coverage contains the following exclusions:

**B. Exclusions**

**1. Applicable to Business Liability Coverage**

This insurance does not apply to:

**********

**p. Personal and Advertising Injury**

**(1)** Caused by or at the direction of the insured with the knowledge that the act would violate the rights of another and would inflict "personal and advertising injury";

**********

**(13)** Arising out of the infringement of copyright, patent, trademark, trade dress, slogan, service mark, trade secret or other intellectual property rights. However, this exclusion does not

apply if the sole and exclusive basis for the claim is infringement, in your "advertisement", of:

**(a)** Copyright

**(b)** Trade dress; or

**(c)** Slogan, unless the slogan is also a trademark, trade name, service mark or other designation of origin or authenticity;

**(14)** Arising out of the unauthorized use of another's name or product in your e-mail address, domain name or metatags, or any other similar tactics to mislead another's potential customers.

**********

**r. Multiple Or Enhanced Damages Because of "Bodily Injury", "Property Damage", or "Personal and Advertising Injury."**

The enhanced or multiple amount of damages awarded against any insured including, but not limited to, double or treble damages, whether or not awarded as compensation, because of "bodily injury", "property damages" or "personal and advertising injury".

(*Id.* at 128, ¶ B.1 (Businessowners Liability Coverage); *id.* at 143-144, ¶ C (amending paragraphs B.1.p and q. of the Businessowners Liability Coverage); *id.* at 287, ¶ B.1.r (adding to paragraph B.1 of the Businessowners Liability Coverage).)

2. Cyber Liability and Data Breach Response Coverage

The Cyber Liability and Data Breach Response Coverage form provides coverage, in pertinent part, as follows:

//

//

//

# I.  INSURING AGREEMENTS

**\*\*\*\*\*\*\*\*\*\***

## D.  Website Media Content Liability

We shall pay on behalf of the "insured", "damages" and "claims expenses", in excess of the retention, which the "insured" becomes legally obligated to pay for one or more of the following acts first committed on or after the "retroactive date" and before the end of the "policy period" in the course of the "insured organization's" display of "media material" on its web site or on social media web pages created and maintained by or on behalf of the "insured organization":

**\*\*\*\*\*\*\*\*\*\***

    **5.**    Infringement of domain name, trademark, trade name, logo, title, metatags, or service mark, or service name; or

    **6.**    Improper deep-linking or framing within electronic content.

**\*\*\*\*\*\*\*\*\*\***

# II.  DEFENSE AND SETTLEMENT OF CLAIMS

**A.**  We shall have the right and duty to defend:

    **1.**    Any "claim" against the "insured" seeking "damages" even if any of the allegations of the "claim" are groundless, false or fraudulent; . . . .

**\*\*\*\*\*\*\*\*\*\***

**D.**  If we initially defend an insured or pay for an insured's defense but later determine that none of the "claims", for which we provided a defense and incurred "claims expenses", are covered under this insurance, we have the right to reimbursement for the "claims expenses" we have incurred.

The right to reimbursement under this provision will only apply to the defense costs we have incurred after we notify you in writing that there may not be coverage and that we are reserving our rights to terminate the defense or the payment of "claims expenses" and to seek reimbursement for "claims expenses".

(*Id.* at 66-67, ¶¶ I.D, II.A.1; *id.* at 62-63 (adding paragraph II.D to section II of the Cyber Liability and Data Breach Response Coverage).)

The Cyber Liability and Data Breach Response Coverage form defines the key terms—"claim" and "media material"—as follows:

## XI. DEFINITIONS

**A.** The following definitions apply to the provisions of this coverage form:

    **6.** "Claim" means:

        **a.** A written demand received by any "insured" for money or services; including service of a suit or institution of regulatory or arbitration proceedings; . . . .

**********

    **31.** "Media material" means any information in electronic form, including words, sounds, numbers, images, or graphics and shall include advertising, video, streaming content, web-casting, online forum, bulletin board and chat room content, but does not mean computer software or the actual goods, products or services described, illustrated or displayed in such "media material".

(*Id.* at 75, ¶ XI.A.6 (defining "[c]laim"); *id.* at 81, ¶ XI.A.31 (defining "[m]edia material").)

In addition, the Cyber Liability and Data Breach Response Coverage form contains the following exclusion:

## IV. EXCLUSIONS

This insurance does not apply to any "claim" or "loss"

**********

**C.** Arising out of or resulting from any actual or alleged false, deceptive or unfair trade practices; . . . .

(*Id.* at 68, ¶ IV.C.)

**B.      The Liability Action**

Beacon filed the Liability Action against the Insureds on June 5, 2018.  (Am. Compl. ¶ 2.3.)  Beacon and Hunt's Plumbing are direct competitors in the plumbing services industry in the Puget Sound region.  (*See* Edmundson Decl. ¶ 3, Ex. 1 ¶¶ 2, 4.)  Beacon claims that the "Beacon brand" is protected by a trademark registered with Washington's Secretary of State.  (*Id.* ¶ 3.)

In the Liability Action, Beacon alleges that the Insureds and their agents engaged in a scheme to manipulate Google AdWords in order to profit off Beacon's goodwill and reputation.  (*Id.* ¶¶ 4-6.)  More specifically, Beacon claims that the Insureds bid on Google AdWords keywords for the phrase "Beacon Plumbing" or variations of that phrase.  (*Id.* ¶¶ 28-29.)  Because the Insureds purchased the right to those keywords via Google AdWords, Google displayed linked advertisements that read, "Beacon Plumbing | Save On Energy Bills. Call Now," each time a Google user searched for some variation of the term "Beacon Plumbing."  (*Id.* ¶ 4.)  According to Beacon, however, these advertisements were for Hunt's Plumbing, not Beacon.  (*Id.*)  When Google users clicked on the linked advertisement, the link took them to a website that Beacon alleges belonged to Hunt's Plumbing:  http://www.hutshvacandplumbing.com/hvac/services.  (*Id.* ¶ 6.)  Beacon alleges that the Insureds' conduct was "intentionally deceptive and cannot be blamed on mistake" and that Mr. and Ms. Hunt "were aware of and personally participated in and approved" the unlawful conduct at issue.  (*Id.* ¶¶ 34, 36; *see also id.* ¶¶ 45, 51, 65, 69 (alleging knowing, willful, or bad faith conduct).)

Beacon's amended complaint in the Liability Action does not provide a clear timeframe for when the Insureds' Google AdWords campaign started or ended.  (*See generally id.*)  But Beacon does allege that it first became aware of the advertisements at issue in May 2018.  (*Id.* ¶ 32.)  Beacon also claims that Hunt's Plumbing contracted with a third party, Shop on Fire, to conduct its Google AdWords advertising (*id.* ¶ 27), and Mid-Century has offered a partially-executed contract between Hunt's Plumbing and Shop on Fire for advertising services that was dated March 27, 2018 (*see* Edmundson Decl. ¶ 4, Ex. 2).

Based on this conduct, Beacon asserted five claims for relief:  (1) state trademark dilution under RCW 19.77.160; (2) state trademark infringement under RCW 19.77.140; (3) violation of the Washington Consumer Protection Act ("CPA"), RCW 19.86.020; (4) tortious interference with business expectancy; and (5) common law trademark infringement and unfair competition.  (*See* Edmundson Decl. ¶ 3, Ex. 1 ¶¶ 37-70.)  Beacon requested injunctive relief; all appropriate statutory, compensatory, and consequential damages— including treble damages for the Insureds' CPA violation; civil penalties under the CPA; and its fees and costs.  (*Id.* ¶¶ A-F.)

C.    **Mid-Century's Coverage Position Letters**

On December 17, 2018, in response to a request from the Insureds, Mid-Century agreed to defend the Insureds under a full reservation of rights.  (*See* Edmundson Decl. ¶ 6, Ex. 4 at 319-322.)  Mid-Century notified the Insureds that there was "likely no coverage" under the Policy (*id.* at 319), and specifically reserved its rights to seek reimbursement of costs of defense (*id.* at 321).  On February 8, 2019, Mid-Century issued

a supplemental coverage position letter that largely reiterated its position that it would

defend the Insureds under a reservation of rights. (*See* Edmundson Decl. ¶ 7, Ex. 5 at

330-333.) Both coverage position letters addressed only the scope of the Insureds'

coverage under the Businessowners Liability Coverage form (*see* Edmundson Decl. ¶ 6,

Ex. 4 at 315-316; Edmundson Decl. ¶ 7, Ex. 5 at 326); neither addressed coverage under

the Cyber Liability and Data Breach Response Coverage form.

**D.    The Present Suit**

Mid-Century filed its initial complaint in the present action on February 26, 2019

(Compl. (Dkt. # 1)) and the operative amended complaint on March 22, 2019 (Am.

Compl.). Mid-Century seeks three forms of relief: (1) a declaration that Mid-Century

has no duty to defend or indemnify the Insureds in the Liability Action; (2) a declaration

that Mid-Century may withdraw from its defense of the Insureds in the Liability Action;

and (3) an order granting Mid-Century reimbursement of its defense costs in the Liability

Action. (MSJ at 7.) The court now considers each request in turn.

### III.    ANALYSIS

**A.    Summary Judgment Standard**

Summary judgment is appropriate if the evidence, when viewed in the light most

favorable to the non-moving party, demonstrates "that there is no genuine dispute as to

any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ.

P. 56(a); *see Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986); *Galen v. Cty. of L.A.*,

477 F.3d 652, 658 (9th Cir. 2007). The moving party bears the initial burden of showing

there is no genuine issue of material fact and that he or she is entitled to prevail as a

matter of law. *Celotex*, 477 U.S. at 323. Even when a motion for summary judgment is unopposed, as here, the moving party retains this initial burden. *See Cristobal v. Siegel*, 26 F.3d 1488, 1494-95 (9th Cir. 1994). Trial courts resolving unopposed summary judgment motions have an obligation to evaluate independently the sufficiency of the moving papers. *Id.* at 1496. The court is "required to view the facts and draw reasonable inferences in the light most favorable to the [non-moving] party." *Scott v. Harris*, 550 U.S. 372, 378 (2007).

**B.      Interpretation of Insurance Contracts and the Duty to Defend**

"In Washington, insurance policies are construed as contracts. An insurance policy is construed as a whole, with the policy being given a fair, reasonable, and sensible construction as would be given to the contract by the average person purchasing insurance." *Weyerhaeuser Co. v. Commercial Union Ins. Co.*, 15 P.3d 115, 122 (Wash. 2000) (internal quotations omitted); *Overton v. Consol. Ins. Co.*, 38 P.3d 322, 325 (Wash. 2002) ("Interpretation of insurance policies is a question of law, in which the policy is construed as a whole and each clause is given force and effect."). Ambiguities are resolved against the drafter-insurer and in favor of the insured. *Weyerhaeuser Co.*, 15 P.3d at 122. "A clause is ambiguous when, on its face, it is fairly susceptible to two different interpretations, both of which are reasonable." *Id.* (quoting *Am. Nat. Fire Ins. Co. v. B & L Trucking & Const. Co.*, 951 P.2d 250, 256 (Wash. 1998)). However, if the language of the policy is clear and unambiguous, the court must enforce the policy as it is written and may not modify the policy or create ambiguity where none exists. *Pub. Util. Dist. No. 1 v. Int'l Ins. Co.*, 881 P.2d 1020, 1025 (Wash. 1994); *Int'l Marine*

*Underwriters v. ABCD Marine, LLC*, 313 P.3d 395, 400 (Wash. 2013) ("A court . . . may not interpret a policy in such a way that it creates nonexistent ambiguities that result in the policy being construed in favor of the insured.").

The duty to defend is triggered "if the insurance policy conceivably covers allegations" against the insured. *Am. Best Food, Inc. v. Alea London, Ltd*., 229 P.3d 693, 696 (Wash. 2010); *see also Truck Ins. Exch. v. Vanport Homes, Inc*., 58 P.3d 276, 282 (Wash. 2002). Moreover, the allegations against the insured are "liberally construed" in favor of triggering the duty. *Truck Ins. Exch.*, 58 P.3d at 282. An insurer may not invoke an equivocal interpretation of the law or the policy to relieve itself of the duty to defend. *Woo v. Fireman's Fund Ins. Co*., 208 P.3d 557, 564 (Wash. Ct. App. 2009). "Although this duty to defend is broad, it is not triggered by claims that clearly fall outside the policy." *Nat'l Sur. Corp. v. Immunex Corp.,* 297 P.3d 688, 691 (Wash. 2013) (citing *Kirk v. Mt. Airy Ins. Co*., 951 P.2d 1124, 1126 (Wash. 1998)). If the insurer remains uncertain about its duty to defend, the insurer must provide a defense under a reservation of rights while seeking a declaratory judgment that it has no duty to defend. *Truck Ins. Exch*., 58 P.3d at 282.

If a claim could impose liability on the insured in a manner that is within the policy's coverage, the court must examine the policy to determine if any policy exclusion "clearly and unambiguously applies to bar coverage." *Hayden v. Mut. of Enumclaw Ins. Co.*, 1 P.3d 1167, 1172 (Wash. 2000) (citing *Diamaco, Inc. v. Aetna Cas. & Sur. Co*., 983 P.2d 707, 709-12 (Wash. Ct. App. 1999)). If so, there is no duty to defend. *Evanston Ins. Co. v. Clartre, Inc*., 158 F. Supp. 3d 1110, 1114 (W.D. Wash. 2016). "Exclusionary

clauses contained in insurance policies are strictly construed against the insurer."

*Stouffer & Knight v. Cont'l Cas. Co.*, 982 P.2d 105, 109 (Wash. Ct. App. 1999).

Because duty to defend cases typically turn on purely legal questions of interpretation of insurance contracts and complaints, "they are routinely resolved at the summary judgment stage." *Evanston*, 158 F. Supp. 3d at 1114.

**C.  Duty to Defend and Indemnify**

1.  Businessowners Liability Coverage

As noted above, Mid-Century's duty to indemnify the Insureds under the Businessowners Liability Coverage is triggered when the Insureds become legally obligated to pay damages resulting from one of three types of injury covered by the Businessowners Liability Coverage:  "bodily injury," "property damage," or "personal and advertising injury."  (Edmundson Decl. ¶ 5, Ex. 3 at 126, ¶ A.1; *id.* at 143, ¶ A (amending paragraph A.1).)  Any "suit" seeking such damages also triggers Mid-Century's duty to defend the Insureds.  (Edmundson Decl. ¶ 5, Ex. 3 at 143, ¶ A.) Conversely, Mid-Century has no duty to defend or indemnify the Insureds for any "suit" seeking damages that did not arise from "bodily injury," "property damage," or "personal and advertising injury" covered by the Businessowners Liability Coverage.  (*See id.*) Alternatively, even if a suit seeks damages that fit within the definitions of "bodily injury," "property damage," or "personal and advertising injury," Mid-Century has no duty to defend or indemnify the Insureds if an exclusion applies.  (*See id.* at 128, ¶ B.1.) Thus, the court considers whether the Liability Action seeks damages resulting from

//

"bodily injury," "property damage," or "personal and advertising injury," and whether

any exclusion applies.

Mid-Century argues that the Liability Action does not allege claims for "bodily

injury" or "property damage" as those terms are defined by the Businessowners Liability

Coverage. (MSJ at 12-13.) The court readily agrees. The Businessowners Liability

Coverage defines "bodily injury" as "bodily injury, sickness or disease sustained by a

person, including death resulting from any of these at any time" (Edmundson Decl. ¶ 5,

Ex. 3 at 137, ¶ F.3), and "property damage" only applies to injuries to "tangible property"

(*id.* at 139, ¶ F.15). At bottom, the Liability Action is a trademark case alleging

monetary harms. (*See generally* Edmundson Decl. ¶ 3, Ex. 1.) No "sickness," "disease,"

or "death" is at issue in that action, and trademarks are not "tangible property." *See*

*Scottsdale Ins. Co. v. Int'l Protective Agency, Inc.*, 19 P.3d 1058, 1061 (Wash. Ct. App.

2001) (defining "tangible property" as property "that has physical form and substance").

Thus, the Liability Action does not allege claims for "bodily injury" or "property

damages."

Mid-Century takes no position on whether the claims in the Liability Action fall

under the definition of "property and advertising injury" contained in the Businessowners

Liability Coverage.[2] (*See* MSJ.) Rather, Mid-Century argues that the exclusions in

paragraphs B.1.p.(13) and (14) of that coverage form apply to the conduct at issue in the

//

---

[2] Because Mid-Century did not raise this question, the court will not address it and instead assumes for purposes of this motion, as Mid-Century does, that the Liability Action seeks damages that fall under the definition of "personal and advertising injury."

Liability Action.  (*Id.* at 13-16.)  Those provisions exclude coverage for any "personal and advertising injury":

> **(13)** Arising out of the infringement of copyright, patent, trademark, trade dress, slogan, service mark, trade secret or other intellectual property rights. . . .
>
> **(14)** Arising out of the unauthorized use of another's name or product in your e-mail address, domain name or metatags, or any other similar tactics to mislead another's potential customers.

(Edmundson Decl. ¶ 5, Ex. 3 at 143-144, ¶ C.)  Beacon's claims in the Liability Action fall squarely within these two exceptions.  The gravamen of Beacon's amended complaint is, quite clearly, the Insureds' infringement of Beacon's trademark and unauthorized use of the "Beacon Plumbing" name in Hunt's Plumbing's advertisements. (*See* Edmundson Decl. ¶ 3, Ex. 1 ¶¶ 3-6, 28-35.)  Three of Beacon's causes of action are explicitly state or common law trademark claims (*id.* ¶¶ 37-51, 66-70), and Beacon's CPA and tortious interference claims are based on the Insureds' allegedly misleading use of the Beacon trademark and business name (*id.* ¶¶ 55, 64).  The court has little difficulty concluding that any "personal and advertising injury" that the Insureds could point to in the Liability Action arises squarely out of the "infringement of . . . trademark . . . or other intellectual property rights" under paragraph B.1.p.(13) and the "unauthorized use of another's name or product in your e-mail address, domain name or metatags, or any other similar tactics to mislead another's potential customers" under paragraph B.1.p.(14). Thus, the Liability Action does give rise to a duty to defend or indemnify even if the claims alleged were "personal and advertising injuries" under the Businessowners

//

Liability Coverage.[3]

In sum, the court concludes that the Liability Action does not allege claims of "bodily injury" or "property damage" and, even if the Liability Action seeks damages for "personal and advertising injuries," the Businessowners Liability Coverage excludes coverage for the specific type of "personal and advertising injuries" at issue in that action. Thus, Mid-Century does not owe the Insureds a duty to defend or indemnify under the Businessowners Liability Coverage.

### 2. Cyber Liability and Data Breach Response Coverage

Although Mid-Century does not owe the Insureds a duty to defend or indemnify under the Businessowners Liability Coverage form, Mid-Century seeks summary judgment on the issue of whether it owes a duty to defend or indemnify the Insureds under the Policy as a whole. (MSJ at 7 ("Mid-Century Insurance Company seeks an order finding that there is no duty to defend and/or indemnify the [Insureds] under the Mid-Century Policy for the claims in the Liability Action.").) But Mid-Century only addressed the the Businessowners Liability Coverage form. (*See* MSJ at 3-4.) After reviewing the Policy, the court is not convinced that the Businessowners Liability Coverage form is the only relevant coverage form in the Policy.

//

---

[3] The court recognizes that Mid-Century offered two additional arguments bearing on the scope of coverage under the Businessowners Liability Coverage form: (1) the paragraph B.1.p.(1) exclusion for personal and advertising injury caused with "knowledge" (Edmundson Decl., ¶ 5, Ex. 3 at 143, ¶ C) applies to bar coverage; and (2) there is no coverage for equitable relief, penalties, and exemplary damages. (*See* MSJ at 16-18.) Because the court concludes that coverage is excluded under paragraphs B.1.p.(13) and (14), the court will not address these additional grounds for denying coverage.

The Website Media Content Liability portion of Cyber Liability and Data Breach Response Coverage form—a form that Mid-Century offered no argument about (*see* MSJ)—provides its own duty to defend and indemnify for damages that the Insureds become obligated to pay as a result of the "display of 'media material.'" (Edmundson Decl. ¶ 5, Ex. 3 at 66-67, ¶¶ I.D, II.A.1.) Although there are exclusions that may apply to the Liability Action (*see, e.g.*, *id.* ¶ IV.C), that coverage form specifically lists "[i]nfringement of . . . trademark . . . [or] metatags" and "[i]mproper deep-linking" as covered acts (*id.* at 66, ¶¶ I.D.5, I.D.6). Absent argument from either the Insureds or Mid-Century, however, the court will not get into the weeds on the question of whether the Cyber Liability and Data Breach Response Coverage form gives rise to a duty to defend or indemnify in this case.

Because Mid-Century has not addressed the possibility that it has a duty to defend and indemnify under the Cyber Liability and Data Breach Response Coverage form, Mid-Century has not yet carried its burden to establish that it is entitled to judgment as a matter of law on its duty to defend or indemnify under the Policy. Thus, the court RESERVES RULING on the portion of Mid-Century's motion that seeks a declaration that it has no duty to defend or indemnify under the Policy and GRANTS Mid-Century 15 days from the filing date of this order to submit a response on the issue of whether it owes the Insureds a duty to defend and indemnify under the Cyber Liability and Data Breach Response Coverage form. The court also GRANTS the Insureds five days from the date of Mid-Century's filing, if any, to submit a response to Mid-Century's arguments on that issue.

**D.      Right to Withdraw and Recover Defense Costs**

Mid-Century also asks the court to issue declaratory relief stating that it may withdraw from defense of the Insureds in the Liability Action and order that Mid-Century is entitled to recovery of its defense costs.  (*See* MSJ at 7.)

If the Businessowners Liability Coverage form was the only coverage form at issue, Mid-Century would be entitled to such relief.  As noted above, Mid-Century has no duty to defend or indemnify the Insureds under the Businessowners Liability Coverage form.  *See supra* § III.C.1.  Where there is no duty to defend or indemnify, an insurer is entitled to withdraw from defense.  *See Canal Indem. Co. v. Adair Homes, Inc.*, 737 F. Supp. 2d 1294, 1303 (W.D. Wash. 2010) ("Where the declaratory judgment action determines there is no coverage, as in this case, the insurer, . . . may withdraw from the defense of the insured[.]" (citing *Farmers Ins. Group v. Johnson*, 715 P.2d 144, 147 (Wash. Ct. App. 1986)).  The Businessowners Liability Coverage also explicitly entitles Mid-Century to recover its defense costs:

> If we initially defend an insured or pay for an insured's defense but later determine that none of the claims, for which we provided a defense or defense costs, are covered under this insurance, we have the right to reimbursement for the defense costs we have incurred.
>
> The right to reimbursement under this provision will only apply to the costs we have incurred after we notify you in writing that there may not be coverage and that we are reserving our rights to terminate the defense or payment of defense costs and to seek reimbursement for defense costs.

(Edmundson Decl. ¶ 5, Ex. 3 at 208, ¶ B.1.)  Here, Mid-Century defended the Insureds in the Liability Action and the court has now concluded that none of the claims were covered under the Businessowners Liability Coverage form.  *See supra* § III.C.1.

Mid-Century also explicitly reserved its rights to terminate the defense and seek reimbursement and notified the Insureds that there may not be coverage under the Businessowners Liability Coverage on December 17, 2018, and again on February 8, 2019. (*See* Edmundson Decl. ¶ 6, Ex. 4 at 319-322; Edmundson Decl. ¶ 7, Ex. 5 at 330-334.) In those circumstances, the endorsement applies and would entitle Mid-Century to reimbursement of its defense costs if the Businessowners Liability Coverage form was the only coverage at issue. *See Mass. Bay Ins. Co. v. Walflor Indus., Inc.*, 383 F. Supp. 3d 1148, 1166-69 (W.D. Wash. 2019) (denying Washington public policy challenge to similar reimbursement endorsement and granting insurer's request for reimbursement).

Because the Businessowners Liability Coverage is not the only coverage form at issue, however, the court concludes that Mid-Century has not shown that it is entitled to judgment as a matter of law. If Mid-Century has a duty to defend and indemnify the Insureds under the Cyber Liability and Data Breach Response Coverage form, then Mid-Century would not be entitled to withdraw or recoup its defense costs. As noted above, Mid-Century offered no argument on the applicability of that coverage form. *See supra* § III.C.2. Thus, the court RESERVES RULING on the portion of Mid-Century's motion that seeks a declaration that it is entitled to withdraw from defense in the Liability Action and recover its defense costs and GRANTS Mid-Century 15 days from the filing date of this order to submit a response on the issue of what impact, if any, the Cyber Liability and Data Breach Response Coverage form has on Mid-Century's request to withdraw and recover its defense costs. The court also GRANTS the Insureds five days

from the date of Mid-Century's filing, if any, to submit a response to Mid-Century's arguments on those issues.

## IV.     CONCLUSION

Based on the foregoing analysis, the court RESERVES RULING on Mid-Century's motion (Dkt. # 20) and GRANTS Mid-Century 15 days from the undersigned date to file a response to this order on the issue of what impact, if any, the Insureds' Cyber Liability and Data Breach Response Coverage form has on its entitlement to summary judgment.  The court also GRANTS the Insureds five days from the date of Mid-Century's filing, if any, to submit a response to any arguments raised in Mid-Century's response.  Any filing by Mid-Century or the Insureds in response to this order shall be no more than 10 pages in length and must be strictly limited to the question presented by the court—whether the Cyber Liability and Data Breach Response Coverage form impacts Mid-Century's entitlement to summary judgment.

Dated this 17th day of September, 2019.

JAMES L. ROBART
United States District Judge